UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

TROY BOYNTON,

Plaintiff,

-against-

CITY OF NEW YORK, NELSON CRUZ,
JAMAAL MILLER, and ANDEW HO,

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - -X

**COMPLAINT**

**PLAINTIFF DEMANDS
A TRIAL BY JURY**

Plaintiff Troy Boynton, by his attorneys, Reibman & Weiner, as and for his

Complaint, hereby allege as follows, upon information and belief:

## PARTIES, VENUE and JURISDICTION

1.      At all times hereinafter mentioned plaintiff Troy Boynton was an adult

male and a resident of Bronx County in the State of New York.

2.      At all relevant times hereinafter mentioned, defendant City of New

York ("New York City"), was and is a municipal corporation duly organized and existing

under and by virtue of the laws of the State of New York and acts by and through its

agencies, employees and agents, including, but not limited to, the New York City Police

Department ("NYPD") and its employees.

3.      At all times hereinafter mentioned, defendant Nelson Cruz, Shield

number 6984, was a member of the NYPD, and was employed, retained, trained and

supervised  by New York City. Cruz is sued herein in his official and individual capacities.

4.      At all times hereinafter mentioned, defendant Jamaal Miller, Tax Id.

No.: 939039, was a member of the NYPD, and was employed, retained, trained and

supervised by New York City. Miller sued herein in his official and individual capacities.

5. At all times hereinafter mentioned, defendant Andrew Ho, Tax Id. No.: 941907, was a member of the NYPD, and was employed, retained, trained and supervised by New York City. Miller sued herein in his official and individual capacities.

6. This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367, and 42 U.S.C. § 1983.

7. Venue is properly laid, pursuant to 28 U.S.C. Section 1391, et seq. in the Eastern District of New York, where plaintiff and defendant City of New York reside, and where many of the events complained of herein occurred.

### RELEVANT FACTS

8. On or about July 1, 2011, at or between 8:30 and 9:00 p.m., plaintiff was driving Park Avenue near Nostrand when he was pulled over by an unmarked NYPD vehicle.

9. Upon information and belief, all three defendants were present at the scene when plaintiff's vehicle was stopped, and each were on duty and acting in their capacity as members of the NYPD.

10. At least two of the three defendants, each in a NYPD uniform, approached plaintiff's vehicle.

11. Plaintiff acknowledged that his driver's license was suspended and the officers ordered him out of the vehicle.

12.     Plaintiff complied and exited the vehicle.

13.     One of the defendants began to arrest plaintiff by seizing his left arm and pulling it behind plaintiff's back.

14.     Less than a month earlier plaintiff had injured his left shoulder. When the defendant pulled his left arm behind his back and lifted it upwards, the plaintiff felt a sudden and severe pain from his injured shoulder and involuntarily flinched.

15.     In an immediate response to plaintiff's flinch, one of the defendants punched plaintiff in the side of his head.

16.     The defendants knocked plaintiff to the ground and repeatedly struck him with their hands, feet, and at least one foreign object, which may have been a baton or an asp.

17.     During the course of their assault, one of the defendants deliberately stepped on the side of plaintiff's head and ground the left side of his face and head into the sidewalk.

18.     Each of the defendants personally participated in this assault or otherwise stood by and allowed the assault to proceed.

19.     Having handcuffed and assaulted plaintiff, the defendants lifted him to his feet.

20.     Plaintiff was transported to Woodhull Hospital, where he was treated for a laceration to his scalp requiring staples, a fibular fracture which required casting, and for facial injuries.

21.     Plaintiff was then taken to a NYPD station house where the defendants completed arrest paperwork and other documents concerning the arrest and use of force against the plaintiff.

22.     The defendants completed arrest paperwork in which they alleged that plaintiff, in addition to driving with a suspended license, had resisted arrest, swung at the defendants and assaulted, or at least attempted, to assault them, and caused defendants Miller and Ho physical injuries.

23.     While plaintiff was driving with a suspended license, all of the allegations concerning plaintiff's conduct after his vehicle was stopped, including his supposed resistance and use of force against the officers, was false and the defendants knew these allegations to be false when they were made.

24.     As a result of the defendants' allegations, the Kings County District Attorney ("KCDA") commenced the criminal prosecution of the plaintiff.

25.     On or about November 16, 2011, plaintiff was indicted various criminal charges, including two counts of assault for allegedly assaulting and injuring defendant Miller, and two counts of assault for allegedly assaulting and injuring defendant Ho.

26.     Upon information and belief, however, the KCDA agreed to dismiss all of these charges, including the claims of assault, in exchange for plaintiff agreeing to plead to two non-criminal charges.

27.     Upon information and belief, in January 2012, plaintiff pleaded guilty

to harassment in the second degree and for driving with a suspended license.

28. In exchange, the KCDA dismissed all of the felony and misdemeanor charges against plaintiff, including all allegations that plaintiff assaulted or injured either of the defendants.

29. At no time did any of the defendants have sufficient legal cause to utilize any level of force against plaintiff, much less the amount of force actually employed, nor was there a reasonable basis for defendants to believe that such cause existed.

30. At no time did any of the defendants take any steps to intervene in, prevent, or otherwise limit the unlawful and unconstitutional use of force by the other defendants.

31. At all times relevant herein, the defendants, including the Doe defendants, were acting within the scope of their employment, and their acts were done in furtherance of the City of New York's interests and without legal justification or excuse.

## FIRST CAUSE OF ACTION

32. Plaintiff repeats the allegations contained in paragraphs "1" through "31" above as though stated fully herein.

33. The defendants willfully and intentionally subjected plaintiff to excessive force by employing more force than reasonably necessary under the circumstances, and without a reasonable basis to believe that the use of such force was appropriate, reasonable, lawful or necessary.

34.     The defendants either participated in the assault or stood by and permitted it to proceed without making any attempt to intervene and stop it from continuing.

35.     By so doing, the individual defendants, individually and collectively, subjected the plaintiff to an excessive use of force and thereby violated of plaintiff's rights under the Fourth Amendment of the United States Constitution.

36.     By reason thereof, the individual defendants have violated  42 U.S.C. §1983 and caused plaintiff to suffer emotional and physical injuries, mental anguish, and the loss of his constitutional rights.

## SECOND CAUSE OF ACTION

37.     Plaintiff repeats the allegations contained in paragraphs "1" through "36" above as though stated fully herein.

38.     Defendant City of New York was responsible for ensuring that reasonable and appropriate levels of supervision were in place within and over the NYPD.

39.     The municipal defendant had actual or constructive knowledge that there was inadequate supervision over and/or within the NYPD with respect to its members' abuse of their authority, use of excessive force, abuse of arrest powers, and other blatant violations of the United States Constitution and the rules and regulations of the NYPD. Despite ample notice of inadequate supervision, defendants took no steps to ensure that reasonable and appropriate levels of supervision were put place to reasonably ensure that NYPD members engaged in police conduct in a lawful and proper manner, including their

use of their authority as law enforcement officers with respect to the general public, including, and specifically, the plaintiff herein.

40.    For example, the municipal defendant and defendant Miller were both defendants in the action entitled *Raymond Jarvis v. City of New York, et al.,* docketed in this district under 08 CV 3069. In that action, plaintiff Jarvis alleged that multiple officers, including Miller, subjected him to excessive force by beating him up when he complained about being stopped on the street. That case was settled for $150,000.

41.    Notwithstanding the nature of the allegations in the Jarvis case, or the case of *Mosely v. City of New York, et al.,* 10 CV 339, also brought in this district, in which the pro se plaintiff alleged that the defendants falsely arrested him, the municipal defendant has taken no steps to investigate Miller or otherwise review his conduct or the supervision over his conduct.

42.    The defendant City of New York deliberately and intentionally chose not to take action to correct the chronic, systemic, and institutional misuse and abuse of police authority by its NYPD employees, including these defendants, and thereby deliberately and intentionally adopted, condoned, and otherwise created through deliberate inaction and negligent supervision, an NYPD policy, practice, and custom of utilizing illegal and impermissible searches, arrests, and detentions, and the manufacturing of evidence, in the ordinary course of NYPD business in flagrant disregard of the state and federal constitutions, as well as the Patrol Guide, up to and beyond the plaintiff's arrest.

43.    All of the acts and omissions by the individual defendants described

7

above were carried out pursuant to overlapping policies and practices of the municipal

defendant in their capacities as police officers and officials pursuant to customs, policies,

usages, practices, procedures and rules of the City and the NYPD, all under the supervision

of ranking officers of the NYPD

44.     The aforementioned customs, practices, procedures, and rules of the

City and the NYPD include, but are not limited to, the following unconstitutional practices:

a.      Using excessive force on individuals, including but not limited
        to those who have already been handcuffed;

b.      Failing to supervise, train, instruct and discipline police officers
        and encouraging their misconduct;

c.      Discouraging police officers from reporting the corrupt or
        unlawful acts of other officers;

d.      Retaliating against officers who report police misconduct; and

e.      Failing to intervene to prevent the above-mentioned practices
        when such intervention is reasonably available.

43.     The existence of aforesaid unconstitutional customs and policies may

be inferred from repeated occurrences of similar wrongful conduct, as documented by the

many civil actions filed in the Eastern and Southern Districts of New York, as well as in New

York State Supreme Court throughout the five boroughs of the City of New York.

44.     In an Order dated November 25, 2009, in *Colon v. City of New York*, 09-

CV-0008 (E.D.N.Y.), the Hon. Jack B. Weinstein stated:

> Informal inquiry by the court and among the judges of this court, as well as
> knowledge of cases in other federal and state courts, has revealed anecdotal
> evidence of repeated, widespread falsification by arresting police officers of
> the New York City Police Department. Despite numerous inquiries by

commissions and strong reported efforts by the present administration -- through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department -- there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged.

45.     Furthermore, more than half the time that the Civilian Complaint Review Board refers substantiated complaints against officers to the NYPD for disciplinary action, the NYPD either simply issues a verbal warning or drops the charges altogether.

46.     It is therefore clear that the municipal defendant has not only tolerated, but actively fostered a lawless atmosphere within the NYPD and that the City of New York was deliberately indifferent to the risk that the inadequate level of supervision would lead to the violation of individuals' constitutional rights in general, and caused the violation of plaintiff's rights in particular.

47.     By reason thereof, the individual defendants have violated 42 U.S.C. §1983 and caused plaintiff to suffer emotional and physical injuries, mental anguish, and the loss of his constitutional rights.

## DEMAND FOR A JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, plaintiff hereby demands a jury trial of all issues capable of being determined by a jury.

WHEREFORE, the plaintiffs demand judgment against defendants jointly and

severally as follows:

       i.      on the first cause of action actual and punitive damages in an amount to be determined at trial;

      ii.     on the second cause of action actual damages in an amount to be determined at trial;

     iii.     statutory attorney's fees pursuant to, *inter alia*, 42 U.S.C. §1988 and New York common law, disbursements, and costs of this action; and

     iv.     such other relief as the Court deems just and proper.

Dated:   Brooklyn, New York
          May 28, 2013

REIBMAN & WEINER

By: _____
Michael B. Lumer (ML-1947)
Attorneys for Plaintiff
26 Court Street, Suite 1808
Brooklyn, New York 11242
(718) 522-1743